Shawn A. Womack, Justice, concurring in part and dissenting in part.. I concur with the majority’s holding that, to the extent the labels and package inserts of midazolam are subject to disclosure, the. circuit court erred in ordering that the Arkansas Department of Correction (“ADC”) disclose the documents without redacting the lot, control, and batch numbers. The ■ affidavit of Rory Griffin stated that these numbers may be loused to identify the proximate sellers and/or suppliers of midazolam. Even Shults does not contest that the Method of Execution Act (“MEA”) requires the ADC to refuse disclosure of information that “may identify or lead to the identification of’ these entities. See Ark. Code Ann. § 5-4-617(i)(2) (Supp. 2015). The circuit court was not entitled to accept the unsupported conjecture of Shults that this information would not lead to identification over the affidavit of the ÁDC that it wouid. ■ I write separately.to dissent from the majority’s conclusion that manufacturers are not included in the general confidentiality provision of the MEA protecting those who “sell” or “supply” drugs “for the execution process.” Ark. Code Ann. § 5-4-617(i)(2)(B). The majority opinion faithfully recounts our principles .of 'statutory interpretation, but I believe that it .too eagerly discards the clear “ordinary and usually accepted meaning” of the statutory terms and reaches a contrary result by relying on two unpersuasive factors it finds in an “examination of the whole act,” As the definitions set out in the majority demonstrate, manufacturers fall squarely within the commonly understood meanings of both seller and supplier. Pharmaceutical manufacturers exist to sell or supply drugs, and the ADC intends to use these drugs “for the execution process.” The majority’s observation that “manufacturer” has a more specific meaning separate from “seller” or “supplier” does not'negate the fact that manufacturers are commonly'understood to “sell”' and “supply” as written in the statute. To hold otherwise is to-find ambiguity in any statute using a general term for an activity rather than a.list of specific terms for entities engaging in that activity. General terms — no less- than specific hsterms — should be “accorded their full and fair scope,” not “arbitrarily limited.” Antonin Scalia & Bryan A. Garner, Reading Law: An Interpretation of Legal Texts 101 (2012). Even admitting the ambiguity claimed by the majority, the two factors identified in the rest of the MEA to exclude manufacturers from the general confidentiality-provision are unpersuasive. First, the majority notes that the legislature used the term “manufacturer” in two subsections of the MEA; this is used to support the inference that the legislature knew how to say manufacturer when it meant manufacturer. That inference would be warranted, however, only if the circuit court’ or the majority were comparing like sections. If the legislature had kept its “compound, test, sell, or supply” language in the general confidentiality provision but in another section granted a different protection to entities who “compound, test, sell, supply, or manufacture” drugs, the majority would be absolutely correct to read manufacturers out of the general “sell” and “supply” in the confidentiality provision. But that is not the case here. The two uses of manufacturer in the MEA are each in identical instances of the fixed phrase “made by a manufacturer approved by the United States Food and Drug Administration.” Ark. Code Ann. § 5-4-617(d)(l), Cj)(l). This is not the legislature denying that manufacturers are sellers and suppliers; it is instead the legislature using the specific term where the general one would be inaccurate. The federal regulatory approval referred to in these subsections only applies to manufacturers, and therefore mirroring the federal regulatory language makes eminent sense. The second factor cited by the majority to exclude drug manufacturers from the common understanding of entities selling or supplying drugs is the assertion that including manufacturers in the confidentiality provision would render subsection (j)(l) of the MEA | nmeaningless. This ignores the structure of the provision, however. On its face, the subsection is a contingent requirement. The ADC must disclose the specified materials, but only if that disclosure can be performed without imperiling the confidentiality of protected entities. The majority asserts that the subsection would be surplusage if manufacturers were intended as a protected entity because any portion of the labels or package inserts would reveal the manufacturer of the drugs and therefore the specified materials would never be disclosed. It is an unwarranted logical leap, however, to assume that the legislature had that information at the time of drafting. As the ADC argued before the circuit court and on appeal, the legislature’s inclusion of section (j)(l) can be read harmoniously with the. common understanding of manufacturers as sellers or suppliers. At the time of enactment, the legislature could have reasoned that labels and package inserts would not identify manufacturers after being stripped of logos, names, and other obvious identifying information. After experience has taught that no amount of redaction will prevent identifying the manufacturer of a drug from these materials, however, the legislature’s safety valve operated as intended and the ADC must refuse disclosure. I would hold that manufacturers are included in the MEA confidentiality provision protecting those who sell or supply drugs used for the execution process. Because any portion of the labels or package inserts requested by Shults would identify the manufacteer, I would reverse the circuit court’s order that the ADC must produce the documents. If any materials are to be disclosed, however, I agree with the majoritys analysis that the lot, control, and batch numbers must be redacted to protect the indisputably shielded proximate 11BseIlers and/or suppliers of the mi-dazolam. Therefore, I respectfully concur in part and dissent in part. Wood, J., joins.